Good morning, Your Honors. My name is Jonathan Kaufman. I represent the petitioner Javier Hernandez-Segovia. The petitioner has petitioned for review of a BIA order which denied his motion to suppress a credible fear report of Form I-870 and to terminate his removal proceedings. At the removal hearing, DHS had the burden of proving that Petitioner was an alien, and it had to prove that by clear and convincing evidence. To prove alienage, it presented the I-870. It didn't present any other evidence. Petitioner contends that the I-870 is the fruit of DHS's egregious violation of the petitioner's Fourth Amendment rights, and that the petition for review should be granted in the BIA order to suppress the I-870 and terminate the removal proceedings. What are the facts in the record that show there was an egregious violation of his Fourth Amendment rights? The facts in the record show that the petitioner was arrested by a Border Patrol agent on June 11, 2014, and that for two months, DHS detained him at a federal detention facility in Louisiana. Can I clarify something? Unlike in the other case that you're going to argue later, I don't understand you to be arguing now in your brief that the arrest itself was a Fourth Amendment violation. Is that right? The arrest was a Fourth Amendment violation because of the provisions of a Regulation 287.3D, which require that the Border Patrol, within 48 hours of their arrest, issue a warrant. Right. So it's all based on the fact that they didn't give him the notices and they kept him for two months, but not that they arrested him without probable cause to begin with, which is the issue in the other case. Well, there's not a lot of information in this record about the arrest. Are you arguing that or not? I just want to know. I didn't think your brief argued that separately, that you were arguing about the detention but not about the arrest itself. Is that right or wrong? Yes or no? No. The petitioner does contend that his arrest was illegal because it was a warrantless arrest. You can contend it's egregious as well, don't you? Excuse me, Your Honor? I thought your argument was that the arrest was unlawful, no probable cause, and that it was egregious. It was an egregious arrest. Okay. So I asked you at the very beginning, what facts are in the record that show, one, there's no probable cause, and two, that the situation was egregious, rises to the level of an egregious, unlawful arrest? The requirement that the Border Patrol issue the warrant quickly after detaining an individual. That's not – what does that have to do with the facts? I don't have to see it at the time he was taken into custody. Well, DHS never explained why they took him into custody. The facts are – You're the one who's filed the motion that – you filed the motion that his arrest was unlawful. The arrest was unlawful. The detention was – the ensuing detention was. What's – there's no – there are no facts. But, Your Honor, the case, the notice to appear was issued by the Department of Homeland Security. They're the ones that commenced the case. They're the ones with the burden of proof. They're the ones that had the responsibility and the duty to explain why they arrested this individual. But they don't have the burden of proof in a motion to suppress. Excuse me, Your Honor? They don't have the burden of proof on a motion to suppress for Fourth Amendment violation. No, the respondent has the – I'm sorry, the petitioner has the – And we can't tell – I mean, I think we're on a tangent because I don't think you're really arguing about the arrest. But with regard to the arrest itself, again, unlike the other case, we don't know where he was. We don't know that he wasn't at a border – actual border entry. We have no idea. And also, quite pointedly, he never said they didn't ask his name. Once they had his name, they could have found the other information, and apparently did. So I don't really – it just seems like there's nothing about the arrest that's in the record that's sufficient to think that – I understand what you're saying, Your Honor. And it is correct that there's not evidence here that would show that the actual – at the point of contact when he was taken into custody, that that in and of itself was a violation of his Fourth Amendment. All right. That's all I was trying to establish. All right. So he was placed into custody, and he should have gotten notice, what, 48 hours after he was in custody, and he didn't. Correct. He was held in custody but wasn't brought before an IJ for about two months. Correct. Is that right? Correct. And that's – you allege – you argue that's a regulatory violation. That's correct. What does that get you? What does that mean? Yeah. What do you get – what relief do you get as a result of that? I think that the coercive effect of having detained him and held him in custody under the circumstances presented here rendered his admission of the alienage to an asylum officer inadmissible at the removal hearing. It was an admission made under duress. It was an admission that was the consequence of the coercive detention. Because he'd been in detention for two months. Being held in detention for two months without being told that he had the right to consult with others, that he had the right to consult with a lawyer, that free legal services were available to him, there was a panoply of rights which the regulations required which, according to this record, were violated every step of the way by the Department of Homeland Security. And that's why the petitioner sought to suppress this I-870, which was the only evidence the DHS presented at the hearing. And not only did they not present evidence at the hearing, even though they had the burden of proof, when the motion to suppress was filed, they didn't answer. And when the appeal was filed, they didn't answer. And when the case was before the board and the petitioner asked the board to issue a They didn't answer that either. When was the interview where the admission was made? Was it towards the beginning of the two-month detention or towards the end? Oh, it was at the end of the two months. He was for two months without contacting anyone and without being informed. It was only after two months that he was allegedly given a form, M444, which is a disclosure form, that the Border Patrol was supposed to give him two months earlier when he expressed a fear of removal. As I understand the government's brief, they are not contesting that there was a regulatory violation. But they are standing entirely on, with regard to your basic argument, that there was independent information. And therefore, in the credible fear interview, you wouldn't suppress anything that happened earlier. Well, the argument that this interview was attenuated from his detention, I don't think, is a very strong argument. Two months of incarceration without legal process did not diminish the coercive effect of the violation that occurred when the Border Patrol didn't comply with the regulations. Did the BIA rely on this independent information grant? Excuse me? Did the BIA rely on this independent information grant? The BIA did not specifically address that. The immigration judge did. What the BIA said was that the admission to the asylum officer was voluntary. And I think that Respondent's brief argues that that shows that the BIA thought that the credible fear interview was attenuated from the arrest and the two-month detention. But the attenuated argument is in the brief, and it was in the IJ opinion, but it's not in the BIA opinion. Is that accurate? I'm sorry. Never mind. Do you want to reserve? Are you going to reserve time or not? Yeah, I'd like to reserve some time if I can. Yes, we'll let you reserve time. Thank you. May it please the Court. David Whatmore for the Attorney General's, Your Honor. Is the volume better now? Yes, it is. Thank you. Okay, wonderful. So I think to begin with, we need to really take a look at a process that's not typically before this Court, and that's the expedited removal process under INA 235. And that's what's really at issue in both of these cases. Under expedited removal, an alien who is apprehended within 100 miles of the border within 14 days of their arrival is subject to an entirely different process that normally is completely unreviewable by this Court. What does that mean? First, a warrantless arrest is authorized. That's under INA 287A2. All the officer must have – But wait a minute. But these people, this person ultimately was in ordinary removal proceedings, right? Not at any time during these alleged violations. Both aliens were in 235 expedited removal proceedings. But what we're reviewing is a ordinary proceeding, not an expedited. No. During the suppression motion, all the conduct at issue in the suppression motion occurred during the 235 expedited removal proceedings. So what we have to look at is – I thought that the immigration – the asylum officer found that he had a credible fear, and then he got – Yeah, that's – for an asylum proceeding. Yeah, that – Well, taking a step back further, Your Honor, what happens in expedited removal? The alien can be arrested without a warrant. All the officer needs to have, assuming they meet the criteria in the regulations, the 100 miles and 14 days, both of these aliens did. This alien in this case was arrested at the Hidalgo Port of Entry. Is that in the record? Excuse me. Is that in the record? Yes, it is, Your Honor. It's on page 96. I thought that the original – I thought we don't know where he was arrested. How do we know that he was at the port? It's in the 870, Your Honor, the I-870. And it's also alleged in the NTA. So this alien was taken into custody without a warrant, as authorized by 287A2, and placed in expedited removal proceedings. The alien would then be taken to the Border Patrol Center, where the alien is – it's a two-step process. First, we need to ascertain, is the alien unlawfully present? And that's a determination that's made in a sworn proceeding that's recorded before a Border Patrol immigration official. And if the alien – if they are removable, the second step is to determine whether that alien has expressed a fear of persecution or any other fear of return. If the alien invokes that fear, then you go to step two, which is what happened. All right. Can I ask a question? Let's back up a minute. Sure. The BIA didn't – is this all leading to the conclusion that the two months detention was okay? Absolutely. Not only is it okay, but it's – All right. But that's what the BIA – excuse me. That's what the BIA – but you don't argue that in your brief. You never argue that in your brief. You argue, as I understood it, your brief was simply based on this independent source notion. Yeah, that's correct. That's correct. So now you're going to change gears on us entirely? No, I'm not trying to change gears, Your Honor. I'm just trying to lay out what's exactly happening here. What's the procedural posture of this case? So in this case, the alien here invokes a credible fear. He claims a credible fear. And then that obligates under INA 235, he must go before an asylum officer to make that determination. If the asylum officer finds, in fact, he does not have a credible fear, then he is instantly removable and it's a final order. He may appeal that to an immigration judge. If the immigration judge upholds it, there's no additional process, and he is removed. If, in the case that happened here, the asylum officer does, in fact, find that there is a credible fear, then that alien is taken out of 255 seats. The only thing you argued in your brief was that there was the information obtained that the credible fear in view was sufficiently independent of the earlier alleged violations. So why don't you tell us why that's correct? Because it's the only thing we're going to review. It's the only thing you say in your brief. I don't understand what any of the rest of this has to do with it. If you can tell me what it has to do with it, I'll listen, but I don't know what it has to do with it. Sure. It gets to the point. Why was he ever going before an asylum officer? Because he made an affirmative attempt to claim asylum. By making that affirmative attempt to claim asylum, he initiates the interview. Therefore, regardless of whether anything occurred during the arrest or during the subsequent mandatory detention, it's all irrelevant. He's making the claim. That's the only reason he's going there. And then we look at the I-870. It's entitled to a strong presumption that it's accurate, and it lays out all of the information we need here. He received the Form 444, which is required by statute. He had all of the advisals read to him during that interview in Spanish. All of the information regarding the questioning, it's laid out in exacting detail where he admits his alienage. When he raised the issue of fear, he was essentially requesting that that be considered, and it took two months. Is that what you're saying? It took two months? No, it didn't take two months, Your Honor. So he was apprehended on June 11th of 2014. And what was the credible fear hearing? Well, his credible fear orientation was on July 25th. That was the orientation where everything is laid out for him. He receives the form about legal counsel in form of all of his rights. He can try and put together his argument, any additional evidence that he would have. And then on August 5th, 2014, which is less than two months, that's his apprehension. And it's only, what, about ten days after his credible fear orientation. He has his credible fear interview in Spanish, where all of his advisals are given. He concedes that he's from El Salvador. He makes his claim regarding his potential fear upon returning to El Salvador, and the asylum officer gives him what he wants. He sought a form of relief from expedited removal. He affirmatively sought it. He got it. That, in itself, breaks any sort of chain. It's independently generated, and those statements are completely reliable. They're under oath, and they're thoroughly recorded by the asylum officer in this case. What was the notice he was supposed to have received after 48 hours? There is no notice. There is no notice? Not an expedited removal, there's not, Your Honor. He is supposed to go before a Border Patrol immigration officer to have the interview. That ER screening is laid out in INA 235B1A Romanet 1. And it says, if an immigration officer determines that an alien who has arrived in the United States is inadmissible under 212A6C, which is misrepresentation of false claim to citizenship, or, and this is what's relevant here, 212A7, lack of valid entry documents, he arrived without permission, the officer shall order the alien to be removed from the United States without further hearing or review, unless the alien indicates either an intention to apply for asylum or fear of persecution. They ascertain the fear. They moved on to step two, which is the interview with the asylum officer. There is no probable cause involved here. There's no warrant that needs to be issued. This is the process in expedited removal. And that's why I was walking the Court through it. It's not an issue that the Court receives because this Court doesn't review determinations in ER. All right. But so, therefore, they can just keep them in detention. The fact that he was kept in detention for two months before he had the credible fear hearing is not, is consistent with the regulations? Is that what you're saying? It's actually consistent with statute, Your Honor. It's INA 235B1B Romanet 4. And that says that any alien subject to expedited removal in this clause, 235, shall be detained pending credible fear or removal. What is there in the record that would assure us that this was an expedited removal proceeding? There would be no credible fear process if it was an expedited removal. That is the only time an alien would ever receive a credible fear determination, is if the alien is in expedited removal. And what you're saying is that because he was in expedited removal proceedings, the 48-hour rule doesn't apply and he could be detained for two months or longer? Yeah, until he's received the two-step process that's articulated clearly in INA 235, which is determination of the alienage. You do the interview. If you do make a claim to fear, then you go to step two. You have the orientation, which you had here. And then, eventually, you get around to the interview with the asylum officer. Because what you're— The reason I'm having such a problem here is because your brief does not, I mean, not just without — it doesn't dismiss it, but it says that it's not contesting the notion that there was some problem here in the detention. Now you're telling us that there was no problem in the detention, but that's not your brief. Well, I would submit to Your Honor that it's regardless. I mean, clearly the statute authorizes it. It doesn't matter if the individual was detained for this period of time because he made the affirmative ask. He affirmatively requested a credible fear determination. I understand that. I understand that that's a different argument. That I understand. But you're standing here now and telling us that there was no statutory or regulatory violation in keeping him in two months without giving him any notice after 48 hours. And, you know, maybe you're right and maybe you're wrong, but it sure isn't in your brief. Well, Your Honor, I wasn't the author of the brief. I'm telling you what the statute says today. And I think if you— I'm just here to argue the case. But, yes, I would say, you know, the statutory, if you read through INA 235, it's abundantly clear what this process has involved. You look at the allegations in the declaration, and every single one of those is completely meritless with regard to an egregious, let alone any violation of the petitioner's due process rights. The information from the I-870 is completely reliable, either as an independent source or just on its own, and the alien should be removable. Because, I mean, the Supreme Court, this Court, the BIA, everybody's clear. You cannot suppress evidence of the fact that the alien is unlawfully present. And anything gleaned from those immigration proceedings, apart from any sort of violation that occurred in the apprehension, it is completely and totally in bounds and usable. Okay. Thank you. Thank you, Your Honor. I think that this contention that there was a lawful expedited removal proceeding which would have taken the case outside of this regulation that required a warrant within two months, I think this is a red herring. There is no evidence in this record whatsoever that there was a lawful expedited removal proceeding conducted by David Waxman. Are you saying there was no expedited removal proceeding? I don't see any evidence in this record. That's not my question. Are you saying that he was not in expedited removal proceedings? That's correct. Because if he was in expedited removal proceedings. What your colleague says is that because there was a credible fear interview, that necessarily means he was in expedited removal proceedings. The credible fear interview does arise within an expedited removal proceeding. It doesn't mean that in this case that that's what occurred. Is there ever a credible fear interview outside of an expedited removal proceeding? I think Javier Hernandez Segovia is that case, Your Honor. No, I'm saying does the law recognize that you can have a credible fear interview outside of an expedited removal proceeding? No. Okay, so doesn't that necessarily mean that because there was a credible fear interview in this case, it was an expedited removal proceeding? The petitioner will concede that there was an expedited removal proceeding, but he does not concede that it was conducted fairly or legally. Okay, and doesn't the regulation say if there is an expedited removal proceeding, the 48-hour rule doesn't apply and there can be an extended detention? If there is a lawful expedited removal proceeding, that's what the regulation says. If there's a lawful expedited removal proceeding, then the Border Patrol has to read the advisals on a form I-867 and take the statement from the subject. That didn't happen here. If there's a lawful expedited removal proceeding, the Border Patrol agent has to inform the person of the reason that he's being detained, what the charge is against him, and to allow him to make a response on a form I-860. These are the two critical forms that are issued by the Border Patrol in expedited removal, and neither are present here on the record. Okay. Did you complete your answer? That's my answer. Okay. Thank you. Thank you. Matter submitted.
judges: Paez, Berzon, Feinerman